The opinion of the court was delivered by
DeBlanc, J.
Defendant was indicted for murder, tried, found guilty and sentenced to death. He appealed, and — to reverse the verdict returned by the jury and the sentence pronounced by the court, he relies on two grounds:
1. That, as the charge against him is that he struck the mortal blow on the 13th of October, then and thereby committing the crime of murder, and — as the party thus struck died of the blow on a day following that on which it was given, the crime was not complete until death ensued, and the accused could not — -legally—have been found guilty as charged in the indictment.
' 2. That one of the jurors concurred in the verdict, only after it had been agreed that a petition addressed to the Governor and signed by every member of the jury, would ask the commutation of the penalty from death to imprisonment for life.
I.
We admit — as contended by the prisoner’s counsel — that the death of the victim struck completes the crime of murder, but we do not admit that it alone constitutes that crime. The authority relied upon by them holds — and as to this there can be no difference of opinion — that unless death does ensue, the felony is not murder, but another, a lesser offence. . . .
*147 Whether struck with a knife, or inflicted with a pistol, a mortal blow «arries with it the unfailing seed of a premature and unnatural death ; and — whatever may have been the interval between the blow and its result, the commission of the offence dates from the instant, when driven or fired with a criminal intent, the blade of the knife or the bullet penetrates a vital part, and either suddenly destroys or irrevocably abridges the life of another. The crime — that which the law reprobates and punishes — is entirely in its commission, and — in cases of murder— that commission embraces the intent to kill, the infliction of a mortal wound, the immediate death or the certainty of the death of one who ■fell in the peace of the State and in the peace of God.
We are reminded that “ the simplest defence which the accused has to a charge against him is the proof of an alibi; and we are asked : how would such a right be protected, if the time laid in the indictment be •considered as immaterial? That right would, under all circumstances, be protected by the court; for, were the evidence to establish that the offence was committed on a day different from that laid in the indictment, and — were the indictment amended so as to correspond with the evidenee--the prisoner would not, could not be denied a reasonable delay to prepare any reasonable defence, which he may really have or believe he has against the unexpected, or at least apparently unexpected ■change in the indictment.
In this regard, the very plain and very imperative terms of the law bear but one, a clear meaning, which no ingenuity can successfully vary, alter or circumvent: “No indictment for any offence shall be held in■■sufficient for omitting to state the time at which the offence was committed, unless, time be of its essence, nor for stating the time imperfectly, nor for stating the offence to have been committed on a day subsequent to the finding of the indictment, or on an impossible day, or on a day that never happened.”
Rev. Statutes, sec. 1063.
The murderer’s guilt is attached to the infliction of the mortal blow: the death of the wounded is the result of the blow, the effect of an antecedent cause, and there can be no doubt that the crime dates from and is properly charged to have been committed — not on the day when •the victim died from a previously inflicted wound, but on the day the mortal wound was inflicted. Though he proves'that — when death en■sued — he was at hundreds of miles from the spot, the accused may be ■convicted — whilst, if be were to prove that he was not present when and where the blow was struck, the jury would be bound to acquit him.
II.
The jury returned against defendant the unqualified verdict of ,guilty, and when polled under the order of the court, every member of *148 the jury said that was his verdict. An attempt was made, not to impeach, but to explain it, to show that, on the part of one of the jurors, it was a conditional verdict, that he had agreed to it, with the understanding that he and all the others would address a petition to the Governor, asking the commutation of the penalty from death to imprisonment for life, and under the belief impressed upon his mind by Other jurors that such would be the effect of the intended petition. This is the accused’s statement. He offered to verify it by the testimony of two witnesses, but the tendered evidence was excluded.
In the case of Mercer vs. the State of Georgia, the judges said:: “ It is urged that the court should have granted a new trial, because Richard Harrison, one of the jury who tried the prisoner, had informed several persons, whose statements appear in the record, that he had not agreed to the verdict, but suffered it to be brought in, because he could not control the rest of the jury.”
“In the first place, this assertion of the juror is not sustained by the record: that shows that he did agree to the verdict, in the way which is known to the law. In the next place, a juror cannot be allowed, in this way, to impeach his verdict. The practice is too plainly improper’ and dangerous to need any comment from us.”
17 Ga. Rep. 175.
The allegation — here—is that the juror did agree to the verdict, but. that he did so conditionally, and what was the condition ? That an application would be made for the commutation of the penalty, which the juror lenew was to be the inevitable consequence of his own verdict. Taking that allegation as it is, what presume and what conclude ? Is it that he intended to render a qualified verdict ? Is it that he believed in the commission of only a fraction of the crime charged ? If so, his-deliberate concurrence, and his proclaimed assent to the verdict, would have amounted to a violation of his oath, a disregard of his duty, to-not less than a crime, against the result of which the lower court would, most assuredly, have protected the prisoner.
The juror was not taken by surprise: it does not appear that he-was deceived ; he discussed and deliberated with the others, and he and1 they answered in open court — at first collectively and afterwards separately — that the prisoner is guilty of murder. Their course justifies the-presumption that every one of them had reached the grave conclusion that — under the facts as disclosed on the trial, the law as explained by the judge — the prisoner should pay, with his life and on the gallows, the life which he had destroyed — that, under the facts and the law, they could not — considering the proportions of the crime — reduce the proportions of the penalty. In the discharge of their duty, they so decided, and so reported. This was right: jurors are the representatives and *149 guardians of both society and. of those denounced in its name; their protection must extend to even a doubtful innocence, but no further. They should show no mercy to merciless offenders.
We think — as held by the Supreme Court of the United States— that “ cases might arise in which it would be impossible to refuse the -affidavits of jurors without violating the plainest principles of justice;” but, were we to command the admission of affidavits establishing the fact relied upon by defendant, what would they prove? Not that the juror did not agree to the verdict as returned, and which he publicly declared was his verdict; but merely that though he — a sworn juror— •could find no reason to decide otherwise than he had done, there— nevertheless — was a reason why the Governor should be asked to alter and reduce the only penalty which could be inflicted by the court. That, which — in their opinion — they could not have done as an act of justicé, they were to invite him to do as an act of clemency.
Was the strange promise said to have been made to the juror complied with ? Has any one of those by whom it is alleged it was made refused to sign the proposed application ? As to this, we are not and could not legally have been informed ; but if this last effort to obtain the commutation of the grave penalty, has been delayed in the hope that the verdict would be annulled and the sentence reversed, that hope is no longer in the way of the intended application.
It is — therefore—ordered, adjudged and decreed that the judgment appealed from is affirmed.